# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| MOORE'S ELECTRICAL & MECHANICAL CONSTRUCTION, INC., *Plaintiff*, v. SIS, LLC, AND SIS-PITTSBURGH, LLC, *Defendants*. | CASE NO. 6:15-cv-00021 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

## I. INTRODUCTION

Plaintiff Moore's Electrical & Mechanical Construction, Inc. ("Moore's") filed this action against SIS, LLC ("SIS") and SIS-Pittsburgh, LLC ("SIS-Pittsburgh") alleging breach of contract claims against SIS and SIS-Pittsburgh and, pursuant to the official Code of Georgia § 13-6-11, seeking attorney fees from SIS.

The dispute arises from a series of contracts between Moore's, SIS, and SIS-Pittsburgh. SIS agreed to provide Moore's with accounting software and support services for that software. SIS-Pittsburgh, in a later contract, agreed to provide the support services in place of SIS. Because SIS has not yet filed an answer, and because substantial discovery has not occurred, many facts surrounding the contract dispute are unknown or unclear.

This matter is presently before the Court upon Defendants' motion to dismiss, stay, or transfer, or, alternatively, to extend time to respond. The parties presented argument to the Court on October 16, 2015.

SIS argues that this action should be dismissed, stayed, or transferred to the Northern District of Georgia, pursuant to the first-to-file rule, because SIS filed suit against Moore's in

Georgia on June 17, 2015, over a month before Moore's filed suit in this court. Alternatively, SIS requests an extension of time to respond to Moore's complaint. Moore's opposes SIS's motion, arguing that the first-to-file is inapplicable. Moore's emphasizes that SIS-Pittsburgh—a named defendant in this court—is not a party to the Georgia suit. For that reason, Moore's argues, the first-to-file rule is inapposite. Alternatively, Moore's argues that, because the first-to-file rule is discretionary, this Court should refuse to apply it because SIS "raced to the courthouse" by preemptively filing suit in Georgia.

For the following reasons, I will grant Defendants' motion and will stay the case.

## II.  FACTUAL AND PROCEDURAL HISTORY[1]

### A.  The Parties

Moore's is a Virginia corporation, with its principal place of business in Altavista, Virginia. Pl.'s Compl. ¶ 1. SIS is a Delaware limited liability corporation, with its principal place of business in Duluth, Georgia. *Id.* at ¶ 2. SIS-Pittsburgh, a subsidiary of SIS, is a Georgia limited liability corporation, with its principal place of business in Pittsburgh, Pennsylvania. *Id.* at ¶ 3.

In 2013, Moore's determined that it needed to upgrade its accounting software and related support services. Aff. Andrew Moore ¶ 16. Moore's submitted inquiries to potential contractors regarding its needs. *Id.* at ¶ 17. In response to these inquiries, SIS sent employees from several locations to Moore's headquarters in Altavista, Virginia. *Id.* at ¶ 18. SIS proposed to review Moore's accounting processes and to develop solutions for Moore's accounting software needs. *Id.*

### B.  Professional Services Agreements, Work Orders, and Project Change Orders

---

[1] Neither SIS nor SIS-Pittsburgh has filed an answer to Moore's complaint. As such, facts taken from Moore's complaint and recited here may later be disputed, clarified, or supplemented by SIS or SIS-Pittsburgh.

- 2 -

Case 6:15-cv-00021-NKM-RSB   Document 22   Filed 10/20/15   Page 2 of 14   Pageid#: 333

On April 10, 2013, Moore's and SIS entered into a Professional Services Agreement ("PSA") whereby SIS agreed to provide an analysis of the possible implementation of accounting software for Moore's. Pl.'s Compl. ¶ 7. On April 15, 2013, SIS issued to Moore's Work Order No. 001, which detailed the analysis to be provided by SIS and set a price of $24,790. *Id.* at ¶ 8. Moore's asserts that it paid SIS in full pursuant to Work Order No. 001. *Id.* at ¶ 10.

On May 30, 2013, Moore's entered into a second PSA with SIS, requiring that SIS provide accounting software to Moore's and related support services. *Id.* at ¶ 11. The software was to be installed at Moore's headquarters in Altavista, Virginia. *Id.* On June 21, 2013, SIS issued Work Order No. 006_001 which detailed the services to be provided and which set a price of $343,170. *Id.* at ¶ 13; *see also* Pl.'s Br. Opp'n, Ex. B.

On June 26, 2014, Moore's and SIS-Pittsburgh entered into change orders 013A, 013B, and 013C. Pl.'s Compl. ¶ 15. Under these change orders, SIS-Pittsburgh agreed to provide the support services, formerly provided by SIS, for Moore's accounting software. *Id.* at ¶ 16. It is not clear from the pleadings or briefings why SIS-Pittsburgh took over for SIS, or what services, if any, that SIS continued to provide Moore's.

### C. Alleged Breach of Contract by SIS and SIS-Pittsburgh

In its complaint, Moore's alleges that SIS breached its contract because the accounting software it provided was inadequate and malfunctioned. *Id.* at ¶ 22. Moreover, Moore's claims that SIS failed to properly provide consulting and support services for the accounting software. *Id.* at ¶ 21. Moore's contends that SIS-Pittsburgh breached its contract with Moore's because it provided inadequate support services. *Id.* at ¶ 33–34. Moore's claims that SIS and SIS-Pittsburgh's alleged breach has resulted in $250,000 damages. *Id.* at ¶ 37.

### D. The Georgia Lawsuit

On June 17, 2015, SIS filed suit against Moore's in the Superior Court of Gwinnett County, Georgia, alleging breach of contract. Def.'s Mem. Supp. 1–2; Pl.'s Br. Opp'n 5. On July 27, 2015, Moore's filed a notice of removal in the United States District Court for the Northern District of Georgia. Def.'s Mem. Supp. 2; Pl.'s Br. Opp'n 5. On July 30, Moore's filed a motion to dismiss for lack of personal jurisdiction and improper venue in the action pending in the Northern District of Georgia. Def.'s Mem. Supp. 2; Pl.'s Br. Opp'n 6. Moore's motion to dismiss is currently pending. Discovery in the Georgia lawsuit has been stayed pending the outcome of Moore's motion to dismiss. Pl.'s Br. Opp'n 6.

On July 27, 2015—the same day it filed its notice of removal in the Northern District of Georgia—Moore's filed suit in this court.

### III. FIRST-TO-FILE RULE DOCTRINE

### A. The First-to-File Rule: Overview

The first-to-file rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982) (citing *Carbide & Carbon Chems. Corp. v. United States Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir. 1944)). This principle of judicial comity among coequal federal courts is often referred to as the first-to-file rule. *See, e.g.*, *Harris v. McDonnell*, C.A. No. 5:13cv00077, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013). "The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005).

## B. Discretionary and Equitable Nature of the Rule

When a case falls within the ambit of the rule, district courts generally stay or dismiss the later-filed case. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594–95 (4th Cir. 2004) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)) ("[T]he first suit should have priority, absent the showing of balance of convenience in favor of the second action."). The rule is not, however, "to be mechanically applied; ultimately, invoking the first-to-file rule is an equitable, case-by-case, discretionary determination." *Harris*, 2013 WL 5720355, at *3 (citing *Elderberry of Weber City, LLC v. Living Ctrs.-S.E., Inc.*, No. 6:12-CV-00052, 2013 WL 1164835, at *4 (W.D. Va. March 20, 2013)); *see also CACI Intern., Inc. v. Pentagen Techs Int'l.*, 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir. 1995) (unpublished) ("[The Fourth] Circuit has no unyielding 'first-to-file' rule."); *US Airways, Inc. v. U.S. Airline Pilots Ass'n*, No. 3:11-cv-371-RJC-DCK, 2011 WL 3627698, at *1 (W.D.N.C. Aug.17, 2011) (noting that application of the rule is discretionary, not mandatory).

## C. First Consideration: Competing Actions Must Be Substantively the Same or Sufficiently Similar

In determining whether to stay or dismiss a later-filed case, courts must first consider whether the two competing actions are substantively the same or sufficiently similar to come within the rule. *See Fed. Home Loan Mortg. Corp. v. Mortg. Guar. Ins. Corp.*, C.A. No. 1:12-cv-359-AJT-JFA, 2012 WL 2673151, at *4 (E.D. Va. July 5, 2012). To determine whether the competing actions are substantively the same or sufficiently similar, courts have considered three factors: (1) the chronology of the filings; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003); *see also U.S. Airways*, 2011 WL 3627698, at *2 (collecting cases). "The

actions being assessed need not be identical if there is substantial overlap with respect to the issues and parties." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635–36 (E.D. Va. 2006).

        D.        **Second Consideration: "Special Circumstances"**

If the competing actions are substantively the same or sufficiently similar, the second-filed action generally should be dismissed or stayed unless "special circumstances [that] warrant an exception" to the rule exist. *See Federated Mut. Ins. Co. v. Pactiv Corp.*, C.A. No. 5:09cv00073, 2010 WL 503090, at *2 (W.D. Va. Feb. 9, 2010) (internal citations, quotation marks, and alterations omitted); *see also Harris*, 2013 WL 5720355, at *4–5. One such special circumstance exists where the facts suggest either a race to the courthouse or an attempt to forum shop. *See, e.g.*, *Quesenberry v. Volvo Grp. N. Am., Inc.*, C.A. No. 1:09cv00022, 2009 WL 648658, at *3 (W.D. Va. March 10, 2009) (observing that "the facts put before the court could lead to . . . an inference" of attempting to "preempt any coercive action by the plaintiffs" or "to forum shop."); *Nutrition & Fitness*, 264 F. Supp. 2d at 360 (W.D.N.C. 2003) (noting that courts "may still make the discretionary determination that the rule should be ignored as a result of . . . forum shopping, anticipatory filing, or bad faith filing."); *PBM Prods., Inc. v. Mead Johnson & Co.*, No. 3:01-CV-199, 2001 WL 841047, at *2 (E.D. Va. April 4, 2001) (departing from the rule because prior-filed action "was an attempt by [defendant] to 'race to the courthouse' . . . .").

A second special circumstance exists where "little if anything has been done to advance [the first-filed] action for trial." *Affinity Memory*, 20 F. Supp. 2d at 954 (citing *Brierwood Shoe Corp. v. Sears, Roebuck and Co.*, 479 F. Supp. 563, 567 (S.D.N.Y. 1979)); *see also Elderberry*

*of Weber City*, 2013 WL 1164835, at *4 ("[C]ourts also consider how far each case has progressed" in determining whether to apply the first-to-file rule.).

### E. Third Consideration: Balance of Convenience

Finally, courts consider "whether the balance of convenience weighs in favor of allowing the second-filed action to proceed." *Elderberry*, 2013 WL 1164835, at *4. In so considering, courts rely on the same factors relevant to a transfer of venue motion. *See Pactiv*, 2010 WL 503090, at *2 ("[T]he factors pertinent to the balance of convenience analysis are 'essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a).'") (quoting *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)). These factors are: (1) the weight accorded to the plaintiff's choice of venue; (2) convenience to witnesses and relative ease of access to evidence; (3) convenience to the parties; and (4) the interests of justice, including the relative congestion of court dockets and a preference for holding trial in the community most affected. *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citation omitted).

### IV. DISCUSSION

#### A. Competing Actions Are Substantively the Same or Sufficiently Similar

The first issue is whether the competing actions are substantively the same or sufficiently similar to fall within the ambit of the first-to-file rule.

Moore's concedes that SIS filed its Georgia lawsuit first. Moore's argues, however, that the parties involved and the issues at stake in the competing actions are so dissimilar as to render the first-to-file rule inapplicable. Moore's emphasizes that the actions lack complete identity of parties—SIS-Pittsburgh is a named defendant in this action, but is absent from the Georgia case. Moreover, while Moore's acknowledges that the dispute between Moore's and SIS features the

- 7 -

same contract at issue in the Georgia case, it notes that the dispute between Moore's and SIS-Pittsburgh features a different contract. Whether SIS-Pittsburgh or Moore's breached that separate contract is thus, Moore's argues, an issue not presented in the Georgia court.

While it may be true that the parties and the issues in this case are not identical, courts have long held that neither the parties involved nor the issues at stake need be completely identical for the first-to-file rule to apply. *See, e.g.*, *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[W]e find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical."); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997) (quotation marks and citations omitted) ("Courts have repeatedly ruled that parties and issues need not be identical in order for one action to be stayed or dismissed in deference to an earlier action."). Although SIS and SIS-Pittsburgh are not literally the same party, they are, for the purposes of this lawsuit, sufficiently similar. SIS-Pittsburgh is a subsidiary of SIS, and SIS-Pittsburgh coordinated with SIS to provide services to Moore's. SIS and SIS-Pittsburgh are also closely connected to the facts which gave rise to this lawsuit—SIS-Pittsburgh agreed to take over for SIS and provide similar, if not identical, services to Moore's. SIS and SIS-Pittsburgh are therefore closely related and are sufficiently similar such that the first-to-file rule applies. In any event, strict identity of parties is not required.

With regard to similarity of issues, the dispute between Moore's and SIS is the same in both the Virginia and Georgia cases. In both cases, the issues are whether Moore's or SIS breached their contracts, and, if so, whether they are entitled to damages. The only difference

between the cases is that Moore's is the Plaintiff in this case while SIS is the Defendant, and vice versa.

The addition of SIS-Pittsburgh presents a closer question. It is true that the issue of whether SIS-Pittsburgh breached its contract, or whether Moore's breached its contract with SIS-Pittsburgh, is not presented in the Georgia case. Although formally based on a different contract, the dispute between Moore's and SIS-Pittsburgh is, however, substantively the same as the dispute between Moore's and SIS. In both disputes, the issue is whether SIS and SIS-Pittsburgh adequately provided support services for Moore's accounting software. Moreover, SIS-Pittsburgh assumed the role of providing the services SIS was contractually obligated to provide to Moore's.[2] Finally, SIS-Pittsburgh coordinated with SIS in providing support services to Moore's. The dispute between Moore's and SIS and the dispute between Moore's and SIS-Pittsburgh is, therefore, substantively the same, or is at least sufficiently similar, to trigger the first-to-file rule.

B.   No "Special Circumstances" Exist

If the competing actions are substantively the same or sufficiently similar, the second-filed action generally should be dismissed or stayed unless "special circumstances warrant[ing] an exception" to the rule exist. *See Federated Mut. Ins. Co. v. Pactiv Corp.*, C.A. No. 5:09cv00073, 2010 WL 503090, at *2 (W.D. Va. Feb. 9, 2010) (internal citations, quotation marks, and alterations omitted). In particular, courts have lessened the application of the first-to-file rule where evidence suggests the first-filed party engaged in forum shopping or raced to the courthouse. *See, e.g.*, *Quesenberry v. Volvo Grp. N. Am., Inc.*, C.A. No. 1:09cv00022, 2009 WL

---

[2] As discussed, *supra*, it is unclear whether SIS continued to provide any services to Moore's. It is also unclear whether SIS-Pittsburgh agreed to provide *exactly* the same services to Moore's as SIS agreed to provide. Nevertheless, it appears that, based on the pleadings, briefings, and representations made at oral argument, SIS-Pittsburgh provided substantively the same services to Moore's as SIS initially agreed to provide.

648658, at *3 (W.D. Va. March 10, 2009). As a minor consideration, courts consider how advanced the first-filed action is relative to the second-filed action. *See, e.g.*, *Elderberry of Weber City*, 2013 WL 1164835, at *4.

In determining whether a party has raced to the courthouse, district courts in the Fourth Circuit consider a variety of factors, including whether the parties: (1) were engaged in ongoing, good-faith settlement discussions when the first-filed action was filed; (2) have concealed filing a lawsuit; (3) disregarded applicable choice of forum clauses; (4) knew the natural plaintiff was imminently going to file suit in another jurisdiction; or (5) omitted controversies between the parties in the lawsuit. *See Mad Panda, LLC v. Gunnar Optiks, LLC*, No. 5:14-CV-00470-F, 2015 WL 4713243, at *4 (E.D.N.C. Aug. 7, 2015) (citing *T2 Prods., LLC v. Advantus Corp.*, No. 3:14-CV00193-GCM, 2014 WL 4181932, at *2 (W.D.N.C. Aug. 31, 2014)); *see also Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.*, No. 3:10-CV-278, 2011 WL 148264, at *4, *5 (W.D.N.C. Jan. 18, 2011).

Moore's asserts that SIS raced to the courthouse in Georgia in response to threatened litigation by Moore's. On April 20, 2015, Moore's counsel sent SIS a letter detailing alleged material breaches by SIS and asserting that it would not pay additional monies to SIS. Pl.'s Br. Opp'n, Attach. 5. After receiving Moore's letter, SIS filed suit in Georgia on June 17, 2015. Moore's claims that the proximity between the April 20 letter and the June 17 filing suggests that SIS raced to the courthouse.

While Moore's contention that SIS raced to the courthouse in Georgia is plausible, it fails. Considering the factors articulated in *Mad Panda*, *supra*: there were no ongoing, good-faith negotiations between the parties when SIS filed suit; SIS never concealed that it filed suit from Moore's; and the parties did not have a choice of forum clause that SIS disregarded. Most

importantly, Moore's April 20 letter did not unequivocally assert that Moore's intended to imminently sue. Rather, the letter detailed SIS's alleged breaches, and merely asserted that Moore's intended to stop paying SIS. As the Fourth Circuit has emphasized, "there can be no race to the courthouse when only one party is running." *Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. Appx. 297, 2001 WL 627618, at *4 (4th Cir. June 7, 2001). Moore's did not threaten to sue SIS, and therefore SIS could not have raced to the courthouse. Indeed, SIS waited nearly two months to file suit after Moore's letter, an amount of time that belies an assertion that SIS raced to file suit before Moore's. After receiving a letter asserting that it would not be paid, SIS filed suit in its home state of Georgia. None of these facts support an inference that SIS raced to the courthouse.

In addition to considering whether either party has raced to the courthouse, courts also consider how far the first-filed case has progressed. Although the Georgia case is not far progressed,³ how far the second-filed case has progressed relative to the first-filed case is only a minor consideration. *See Elderberry of Weber City*, 2013 WL 1164835, at *4. On these facts, this minor consideration is not enough to warrant an exception to the first-to-file rule. Ultimately, because there is no evidence that SIS raced to the courthouse, a departure from the first-to-file rule is unwarranted.

### C. Balance of Convenience Does Not Weigh in Favor of Allowing this Action to Proceed

In evaluating the balance of convenience, courts consider the following factors: (1) the weight accorded to the plaintiff's choice of venue; (2) convenience to witnesses and relative ease of access to evidence; (3) convenience to the parties; and (4) the interests of justice, including the

---

³ As of this opinion's writing, the only action pending in the Georgia case is Moore's motion to dismiss. Per the parties' agreement, discovery is stayed in Georgia pending the resolution of the motion to dismiss.

relative congestion of court dockets and a preference for holding trial in the community most affected. *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citation omitted).

With regard to the first and third factors, Moore's and SIS effectively argue to a stalemate. Moore's argues that its choice of the Virginia forum should be respected, while SIS argues that its choice of the Georgia forum should be respected. Likewise, Virginia would be the more convenient forum for Moore's, while Georgia would be the more convenient forum for SIS.

With regard to the second factor—convenience to witnesses and relative ease of access to evidence—the parties arguments are also in equipoise. Moore's employees, located in Virginia, and SIS employees, located in Georgia, are expected to testify at trial. Whether the trial occurs in Georgia or in Virginia, one party's witnesses will have to travel and will be inconvenienced. The convenience to witnesses is thus effectively the same for both parties. Moore's argues that physical evidence expected to be presented at trial—namely, the computer software—is located in Altavista, Virginia. Moore's has not, however, demonstrated why the parties would need to physically view and inspect the software. Rather, both parties conceded at oral argument that this case would be largely a "paper trial," with the evidence consisting mainly of documents. Thus, while Virginia might be the slightly more convenient forum, it is not substantially more convenient.

Factor four relates to the interests of justice. At the outset, it should be noted that the parties have agreed that the contracts at issue are governed by Georgia law. All things being equal, it seems most fair and efficient for a Georgia federal district court, rather than a Virginia federal district court, to construe and apply Georgia state law.

Moore's argues, however, that all things are not equal. Moore's relies on precedent from the Eastern District of Virginia which suggests that, in considering the interests of justice, courts must consider docket congestion. *See, e.g.*, *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 695 (E.D. Va. 2007). Moore's claims that the Georgia case is the 2,656th civil case filed in that court, while the Virginia case is only the 21st case filed in this court. SIS emphasizes, and Moore's admits, however, that "docket conditions are only a 'minor consideration' . . . ." *Lycos, Inc.*, 499 F. Supp. 2d 696 (quoting *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999)). On these facts, it is not enough to warrant an exception to the rule.

Ultimately, Moore's has not shown that the balance of convenience weighs in favor of litigating the case in Virginia. Both parties would be burdened by litigating in the other party's preferred forum. Moreover, there is no indication that litigating in Georgia would affect severely the parties' access to evidence. Finally, the interests of justice do not call for the case to be litigated in Virginia.

### V. CONCLUSION

I find that the first-to-file rule applies, and I do not think a departure from the rule is warranted. The first-to-file rule ultimately seeks to promote efficiency. As the Supreme Court has stated, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . [and] [h]ow this can best be done calls for the exercise of judgment . . . ." *Landis*, 299 U.S. at 254. I believe the appropriate outcome is to stay this case pending Georgia's determination of Moore's motion to dismiss.

Because SIS and SIS-Pittsburgh are so related,[4] I think the most efficient result is to litigate the lawsuit between SIS, SIS-Pittsburgh, and Moore's in the same forum, whether that be

---

[4] As discussed, *supra* IV.A., SIS-Pittsburgh is a subsidiary of SIS and ultimately provided similar if not identical services as did SIS to Moore's.

- 13 -

in Georgia or Virginia. The first-to-file rule must, however, be respected. If the Georgia court grants Moore's motion to dismiss, or, alternatively, transfers the case to this Court, then the entire action can proceed in a single forum.

For the above reasons, I will grant SIS and SIS-Pittsburgh's motion, and will stay the case pending the Georgia court's ruling on Moore's motion to dismiss. The parties are ordered to advise the Georgia court of this decision, and to file notice with this Court when the Georgia court rules on Moore's motion to dismiss. An appropriate order will accompany this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __20th__ day of October, 2015.

                                                                                                                          NORMAN K. MOON
                                                                                                                          UNITED STATES DISTRICT JUDGE